## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DOROTHY FORTH, LISA BULLARD, RICARDO GONZALES, CYNTHIA RUSSO, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 38 HEALTH AND WELFARE FUND, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 295-295C WELFARE FUND, AND STEAMFITTERS FUND LOCAL 439, on Behalf of Themselves and All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>WALGREEN CO.,<br><br>       Defendant. | Underlying Action:<br>Civil No. 17-cv-2246<br>United States District Court<br>Northern District of Illinois<br><br>CLASS ACTION<br><br>ORAL ARGUMENT REQUESTED<br><br>**DECLARATION OF CAREY ALEXANDER IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL NON-PARTY CAREMARK, LLC TO COMPLY WITH SUBPOENA** |

I, Carey Alexander, pursuant to 28 U.S.C. §1746, declare as follows:

1.      I am associated with the law firm of Scott+Scott Attorneys at Law LLP and seek admission *pro hac vice* contemporaneously herewith.  I submit this Declaration in support of Plaintiffs' Motion to Compel Non-Party Caremark, LLC to Comply with Subpoena.  I have personal knowledge of the facts set forth herein and could testify competently to them if called upon to do so.

2.      Plaintiffs Dorothy Forth, Lisa Bullard, Ricardo Gonzales, Cynthia Russo, International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund ("IBEW Local 38"), International Union of Operating Engineers Local 295-295C Welfare Fund, and Steamfitters Fund Local 439 ("Plaintiffs") are consumers and third-party payers who filed a class action on March 23, 2017.  *See Forth v. Walgreen Co.*, No. 17-cv-2246 (N.D. Ill.) (the "Underlying Action").

3.      Plaintiffs have sought from Walgreen Co. ("Walgreens") communications concerning the definition of "usual and customary" ("U&C") found in Walgreens' contracts with non-party Caremark, LLC ("Caremark"), and communications with Caremark relating to the inclusion of PSC prices in reporting Walgreens' U&C prices.  *See* Exhibit X, Request No. 16 & 17.

4.      To identify responsive documents, Plaintiffs and Walgreens met and conferred and collaboratively developed a set of search terms that the parties agreed were likely to identify responsive documents.  The more than two-dozen search terms Plaintiffs and Walgreens agreed to use included, among others:  "psc", "u pre/2 c", and "usual w/2 cust*".  These terms were included in particular because "PSC" is the most commonly used shorthand to refer to the Prescription Savings Club, and because of the substantial variation used in referring to the "usual and customary" price.

5.      On April 29, 2019, Walgreens represented to Plaintiffs that it had substantially completed its production of documents responsive to Plaintiffs' First and Second Document Requests.  By letter dated May 30, 2019, Plaintiffs wrote to Walgreens to express concern with the lack of responsive documents pertaining to documents exchanged with pharmacy benefit managers ("PBMs").  Following Plaintiffs' letter, Walgreens made two additional productions of documents.  Through June 2019, Plaintiffs and Walgreens continued to meet and confer regarding the deficiencies Plaintiffs identified in Walgreens' document production relating to communications and contracts with Caremark.

6.      Walgreens produced less than 210 communications exchanged with Caremark for a relevant time period that spanned from 2007 through to the present.

7.      For all of 2016, Walgreens produced only 28 emails exchanged between Walgreens and Caremark.  In all of 2017, Walgreens produced only 69 emails exchanged between Walgreens and Caremark.  And in all of 2018, Walgreens produced only 52 emails exchanged between Walgreens and Caremark.

8.      Caremark serves as the PBM for one of the named Plaintiffs, IBEW Local 38.

9.      On information and belief, Plaintiffs and Caremark met and conferred on July 30, 2019.

10.     Plaintiffs and Caremark met and conferred on October 23, 2019.  During that call, Plaintiffs reiterated that they were not broadly asking Caremark to produce any and all communications it had with Walgreens, but rather to confirm whether additional documents existed to fill the gaps Plaintiffs' had identified in Walgreens' production.  On October 31, 2019, in response to Caremark's request, Plaintiffs provided Caremark with a list of Walgreens

employees with whom Caremark employees communicated that Plaintiffs had identified from Walgreens' document production.

11.    On January 16, 2020, Caremark produced 64 communications to Plaintiffs. Each of the communications came from the custodial file of a single individual, Todd Guinn. None were from after June 2015. Caremark's production contained communications relating to Caremark's contracts with Walgreens that Walgreens had failed to produce to Plaintiffs.

12.    Plaintiffs met and conferred with Caremark on February 11, 2020. During that call, Caremark informed Plaintiffs that after receiving a subpoena from Walgreens, Caremark had decided that it would search for and produce documents. Caremark explained that it previously had collected the custodial files of Todd Guinn and Stephanie Harris in June 2015 in order to respond to requests served in connection with litigation involving CVS's practices at its own pharmacies, and that Caremark conducted its search by running search terms against these two previously collected custodial files. Caremark represented that it would be happy to share the terms used with Plaintiffs, but said it did not intend to conduct any additional searches for responsive information.

13.    Plaintiffs met and conferred with Caremark on March 3, 2020. During that call, Caremark proposed that, if Plaintiffs were also willing to drop their separate request for transactional data, Caremark would be willing to engage in a self-collection process by which it would ask the individuals Plaintiffs had identified whether they recalled attending relevant meetings with Walgreens and had any documents concerning the meeting or potential amendments to Caremark's agreements with Walgreens. Caremark also said it would want Plaintiffs to bear the cost of any additional searches. Plaintiffs requested that Caremark provide an estimate regarding the potential cost of such searches.

14.     On March 18, 2020, Caremark produced eight communications to Plaintiffs.

15.     Plaintiffs met and conferred with Caremark on April 16, 2020.  During that call, Caremark again agreed to provide the search terms it had used and additionally agreed to provide information regarding the costs incurred to conduct its unilateral search.  Caremark further represented that it had withheld otherwise responsive documents from production on the basis that such documents are privileged and agreed to provide a privilege log.  Plaintiffs stated during the call that if the parties could reach agreement on the search terms and Caremark agreed to search for responsive documents from the four identified custodial files for 2016-2018, motion practice could be avoided.

16.     To date, Caremark has still not provided Plaintiffs with either a privilege log or information relating to the costs incurred to conduct its unilateral searches, as it had agreed to do.

17.     Attached hereto as **Exhibit 1** is a true and correct copy of the Third Amended Consolidated Class Action Complaint and Jury Demand filed in *Forth v. Walgreen Co.*, No. 17-cv-2246 (N.D. Ill.) (ECF No. 269).

18.     Attached hereto as **Exhibit 2** is a true and correct copy of a Subpoena to Testify at a Deposition in a Civil Action, dated August 24, 2018, that Plaintiffs served on Caremark, LLC ("Caremark").

19.     Attached hereto as **Exhibit 3** is a true and correct copy of Caremark's Objections and Responses to Plaintiffs' Third-Party Subpoena, dated October 4, 2018.

20.     Attached hereto as **Exhibit 4** is a true and correct copy of an Amended Subpoena to Testify at a Deposition in a Civil Action, dated July 26, 2019, that Plaintiffs served on Caremark.

21.     Attached hereto as **Exhibit 5** is a true and correct copy of Caremark's Objections and Responses to Plaintiffs' [Amended] Third-Party Subpoena, dated November 13, 2019.

22.     Attached hereto as **Exhibit 6** is a true and correct copy of an excerpt from the Subpoena to Testify at a Deposition in a Civil Action, dated November 8, 2019, that Defendant Walgreen Co. served on Caremark.

23.     Attached hereto as **Exhibit 7** is a true and correct copy of Plaintiffs' First Amended Request for Production of Documents, dated May 14, 2018.

24.     Attached hereto as **Exhibit 8** is a true and correct copy of a letter from Jason H. Alperstein to Selina Coleman, dated May 30, 2019, regarding Plaintiffs' Requests for Production of Documents.

25.     Attached hereto as **Exhibit 9** is a true and correct copy of a letter from Selina Coleman to Jason H. Alperstein, dated June 14, 2019, regarding Plaintiffs' Requests for Production of Documents.

26.     Attached hereto as **Exhibit 10** is a true and correct copy of emails exchanged between Grant Geyerman and Jason Alperstein, dated July 29, 2019, and July 30, 2019.

27.     Attached hereto as **Exhibit 11** is a true and correct copy of a letter from Jason H. Alperstein to Grant Geyerman, dated October 16, 2019, regarding Plaintiffs' Amended Subpoena to Caremark.

28.     Attached hereto as **Exhibit 12** is a true and correct copy of a letter from Jason H. Alperstein to Grant Geyerman, dated January 21, 2020, regarding Plaintiffs' Amended Subpoena to Caremark.

29.     Attached hereto as **Exhibit 13** is a true and correct copy of an email sent by Erin Green Comite to Grant Geyerman, dated February 12, 2020.

30.     Attached hereto as **Exhibit 14** is a true and correct copy of an email from Grant Geyerman dated March 3, 2020.

31.     Attached hereto as **Exhibit 15** is a true and correct copy of an email I sent, dated March 4, 2020, and the replies thereto sent by Grant Geyerman, dated March 9, 2020, and the reply thereto sent by Erin Green Comite, dated March 9, 2020.

32.     Attached hereto as **Exhibit 16** is a true and correct copy of an email sent by Erin Green Comite, dated April, 7, 2020.

33.     Attached hereto as **Exhibit 17** is a true and correct copy of an email that I sent, dated April 21, 2020.

34.     Attached hereto as **Exhibit 18** is a true and correct copy of an email sent by Grant Geyerman, dated May 15, 2020.

35.     Attached hereto as **Exhibit 19** is a true and correct copy of an email that I sent, dated June 5, 2020, and the reply thereto sent by Grant Geyerman, dated June 8, 2020.

36.     Attached hereto as **Exhibit 20** is a true and correct copy of an email that I sent, dated June 8, 2020, and the reply thereto sent by Grant Geyerman, dated June 8, 2020.

37.     Attached hereto as **Exhibit 21** is a true and correct copy of a letter from Joseph P. Guglielmo to Grant Geyerman, dated June 12, 2020, regarding Plaintiffs' Amended Subpoena to Caremark.

38.     Attached hereto as **Exhibit 22** is a true and correct copy of an email sent by Grant Geyerman, dated June 17, 2020.

39.     Attached hereto as **Exhibit 23** is a true and correct copy of excerpts from the January 17, 2020 deposition of Scott Schuler, Walgreens' Divisional Vice President of Contracting, a copy of which is being filed contemporaneously under seal.

40.     Attached hereto as **Exhibit 24** is a true and correct copy of excerpts from the January 17, 2020 deposition of Sue Ewing, a former Senior Director in Walgreens' Pharmacy

Contracting & Pricing Developments Operations, a copy of which is being filed contemporaneously under seal.

41.      Attached hereto as **Exhibit 25** is a true and correct copy of an excerpt from Exhibit 69 marked at deposition in the Underlying Action, a copy of which is being filed contemporaneously under seal.

42.      Attached hereto as **Exhibit 26** is a true and correct copy of an excerpt from Exhibit 79 marked at deposition in the Underlying Action, a copy of which is being filed contemporaneously under seal.

43.      Attached hereto as **Exhibit 27** is a true and correct copy of an excerpt from Exhibit 179 marked at deposition in the Underlying Action, a copy of which is being filed contemporaneously under seal.

44.      Attached hereto as **Exhibit 28** is a true and correct copy of an excerpt from Exhibit 236 marked at deposition in the Underlying Action, a copy of which is being filed contemporaneously under seal.

45.      Attached hereto as **Exhibit 29** is a true and correct copy of an excerpt from Exhibit 244 marked at deposition in the Underlying Action, a copy of which is being filed contemporaneously under seal.

46.      Attached hereto as **Exhibit 30** is a true and correct copy of an excerpt from Exhibit 245 marked at deposition in the Underlying Action, a copy of which is being filed contemporaneously under seal.

47.      Attached hereto as **Exhibit 31** is a true and correct copy of an excerpt from Exhibit 246 marked at deposition in the Underlying Action, a copy of which is being filed contemporaneously under seal.

48.     Attached hereto as **Exhibit 32** is a true and correct copy of an excerpt from Exhibit 247 marked at deposition in the Underlying Action, a copy of which is being filed contemporaneously under seal.

49.     Attached hereto as **Exhibit 33** is a true and correct copy of an excerpt from Exhibit 248 marked at deposition in the Underlying Action, a copy of which is being filed contemporaneously under seal.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed on the 26th of June, 2020, in New York, New York.

Carey Alexander

8