UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DOROTHY FORTH, et al., : | |
|     Plaintiffs, : | |
| : | 1:20-mc-00007-MSM-PAS |
| v. : | |
| : | Underlying Action: |
| WALGREEN CO., : | Civ. A. No. 17-cv-2246 (N.D. Ill.) |
|     Defendant. : | |

## MEMORANDUM AND ORDER

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    Now pending before the Court is the motion of Plaintiffs Dorothy Forth, Lisa Bullard, Ricardo Gonzales, Cynthia Russo, International Brotherhood of Electrical Workers Local 38 Health and Welfare Fund, International Union of Operating Engineers Local 295-295C Welfare Fund, and Steamfitters Fund Local 439 ("Plaintiffs") to compel third-party Caremark, LLC ("Caremark"), to produce documents responsive to three requests in a subpoena duces tecum issued on July 26, 2019.  ECF No. 6-4.  The subpoena was issued in connection with Plaintiffs' suit against Walgreen Co. ("Walgreens") brought in 2017 in the Northern District of Illinois; Plaintiffs allege that Walgreens engaged in an unlawful scheme to inflate the price of generic prescription drugs.

    Third-party Caremark serves as the pharmacy benefit manger ("PBM") for one of the named Plaintiffs.  The requests in issue (Document Requests 2, 3 and 4) seek communications between Caremark and Walgreens related to (1) contracts pertaining to drug benefits applicable to Plaintiffs' purchases from Walgreens; (2) the definition of usual and customary ("U&C") prices; and (3) consideration of Walgreens' Prescription Savings Club program (the "Prescription Savings Club" or "PSC") in setting the U&C price.  ECF No. 6-4.  After Caremark

made two limited searches for responsive documents and refused to search further, Plaintiffs filed their motion to compel in this District as required by Fed. R. Civ. P. 45(d)(2)(B)(i).

The Court referred the motion to compel to me for determination. Although it presents a dispute that may be boiled down to a simple discovery scuffle, its resolution is also outcome-determinative of the entire case in this Court, which normally requires a report and recommendation.[1] 28 U.S.C. § 636(b)(1)(B). However, during the hearing, both parties advised the Court that they consent to my assuming decisional responsibilities for the case pursuant to 28 U.S.C. § 636(c)(1).

I.      BACKGROUND

Plaintiffs' claim against Walgreens is one of many cases brought around the country, which allege that a pharmacy charged third-party payers and consumers an inflated U&C price for generic prescription drugs, while offering cash-paying members of the public discounted prices. E.g., Me. Cmty. Health Options v. CVS Pharmacy, Inc., No. 20-10JJM, 2020 WL 1130057, at *1 (D.R.I. Mar. 9, 2020); Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc., 305 F. Supp. 3d 337, 340 (D.R.I. 2018); United States ex rel. Winkelman v. CVS Caremark Corp., 118 F. Supp. 3d 412, 416 (D. Mass. 2015), aff'd, 827 F.3d 201 (1st Cir. 2016). As the PBM for one of the Plaintiffs, Caremark contracted with Walgreens and (Plaintiffs believe) must have communicated extensively with Walgreens about U&C pricing and the impact of Walgreens' Prescription Savings Club on U&C pricing, in the same way that PBMs for other Plaintiffs did. After seeking documents reflecting such communications directly

---

[1] This approach is consistent with recent guidance from our Circuit. ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC, 951 F.3d 41, 47-48 (1st Cir. 2020) (favoring a functional interpretation of "dispositive" that looks at the motion's potential effect on the litigation). It also aligns with applicable decisional law. See Conley v. Competitive Techs., Inc., No. MC 18-15-JJM-PAS, 2018 WL 4562350, at *1 n.1 (D.R.I. Sept. 24, 2018) (report and recommendation issued on a motion to appoint a receiver as a result of the premise that it had "a more dispositive flavor because it [was] the only relief sought in the case").

from the defendant in the underlying case (Walgreens), and coming up relatively dry, Plaintiffs turned to Caremark to fill the gap. In targeting Caremark with a Fed. R. Civ. P. 45 subpoena,[2] Plaintiffs were aware that they were not pulling a non-involved third party into a case to which it was a stranger. Not only is Caremark, as a PBM for one of the Plaintiffs, directly involved with Walgreens regarding the matters in issue, but Caremark and its parent/affiliate, CVS Health Corporation and other CVS entities, have also been sued for essentially the same practice with respect to their own U&C practices. E.g., Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp., 221 F. Supp. 3d 227, 230 (D.R.I. 2016); CVS Caremark Corp., 118 F. Supp. 3d at 415. Thus, Plaintiffs posit that a win for Walgreens in the case underlying this motion would likely be a win for CVS and Caremark.

As originally propounded, Document Requests 2, 3, and 4 sought communications between Caremark and Walgreens regarding contracts, U&C prices and Walgreens' PSC over a thirteen-year period from January 1, 2007, to the present. ECF No. 6-4 at 12-14. After an inconclusive attempt by both parties to meet and confer, Caremark unilaterally ran search terms that Plaintiffs consider inadequate[3] through the files of custodians that had already been harvested for other cases (a collection set that ended with 2015), resulting in production of sixty-four communications for the period from December 2008 to September 2015. After Plaintiffs highlighted the skimpy production by Walgreens, which lacked even transmittals for certain produced documents or documents pertaining to a meeting between Caremark and Walgreens to discuss the contractual definition of U&C pricing, Caremark ran a second targeted search limited

---

[2] Plaintiffs' first subpoena to Caremark was issued on August 24, 2018. It was amended in light of Walgreens' production; the amended subpoena, which is the one in issue now, was issued on July 26, 2019.

[3] These search terms did not include "PSC," which is how Walgreens refers to its Prescription Savings Club. If Caremark had met and conferred with Plaintiffs, it is clear that this term would have been proposed and accepted.

to June/July 2017 (the time frame for the meeting); again Caremark acted unilaterally (without meeting and conferring), and again it used search terms that omitted the string ("PSC") that appears to be essential to turn up responsive documents. The second search resulted in production of eight additional communications. In performing these searches, Caremark used its in-house technical capacity and did not engage an outside vendor. Caremark told Plaintiffs that any further searching would be excessively burdensome, though it provided no information regarding costs to buttress its claim of burden.

Plaintiffs were thoroughly dissatisfied with Caremark's two searches because neither addressed the gaps that they had identified in Walgreens' production. In an attempt to mitigate Caremark's claim of undue burden, Plaintiff proposed that Caremark run a set of search terms that included "PSC" through the files of only four custodians for the period of only 2016-2018. Caremark complained that this would still be burdensome because its quick look established that these searches would yield a tranche of 3,156 documents for review for responsiveness and privilege. However, at the hearing before me, Caremark suggested using Walgreens' email address as a search term to further limit the set that would be harvested and Plaintiffs readily agreed. The parties concurred that this additional limitation not only would reduce the review set well below three thousand, but also would eliminate the burden of privilege concerns because every harvested document would constitute a communication with a third party. Nevertheless, Caremark still resists compliance.

## II.     APPLICABLE LAW AND ANALYSIS

A Fed. R. Civ. P. 45 subpoena for documents is subject to the relevancy "parameters established by Rule 26." <u>Vesper Maritime Ltd. v. Lyman Morse Boatbuilding, Inc.</u>, No 2:19-cv-00056-NT, 2020 WL 877808, at *1 (D. Me. Feb. 21, 2020). Before commencing an

electronically stored information search, it is best practice for the parties to meet and confer "regarding custodians and search terms to inform the document production." <u>Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Reservation</u>, No. 17cv1436-GPC(MSB), 2020 WL 2747117, at *7 (S.D. Cal. May 27, 2020).  The non-party resisting compliance with a subpoena "bears the burden of showing that the subpoena imposes an undue burden."  <u>In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.</u>, MDL No. 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013).  While Fed. R. Civ. P. 45(d)(1) requires that the party seeking third-party discovery must "take reasonable steps to avoid imposing undue burden[,]" if the party tries first to engage in party discovery, but is still left with a gap, "some additional effort by [a subpoenaed entity] is in order."  <u>Creative Machining & Molding Corp. v. CRC Polymer Sys., Inc.</u>, No. 17-30043-MAP, 2018 WL 1440320, at *2, 3 (D. Mass. Mar. 22, 2018).

      Cost shifting is one tool that the Court may deploy to reduce the burden of a subpoena.  <u>See</u> Fed. R. Civ. P. 45(d)(3)(A)(iv).  Nevertheless, "[a] non-party can be required to bear some or all of its expense where the equities of a particular case demand it."  <u>High Rock Westminster St., LLC v. Bank of Am., N.A.</u>, No. 13-500S, 2014 WL 12782611, at *1 (D.R.I. June 17, 2014) (quoting <u>In re Honeywell Intern. Inc. Sec. Litigation</u>, 230 F.R.D. 293, 302-03 (S.D.N.Y. 2003)).  In determining whether to shift costs from the non-party, it is appropriate for the Court to consider: "(1) whether the non-party has an interest in the outcome of the litigation; (2) whether the non-party can more readily bear the costs of production than the requesting party; and (3) whether the litigation is of public importance."  <u>High Rock Westminster St. LLC</u>, 2014 WL 12782611, at *1 (quoting <u>In re Subpoenas to Folliard and McKnight</u>, No. 10-mc-789 (ESH) (AK), 2012 WL 907763, at *2 (D.D.C. March 16, 2012)).

Applying these principles to the circumstances presented here, it is clear that Plaintiffs' motion should be granted. The requested documents are plainly relevant and Plaintiffs have tried to get them from Walgreens yet gaps remain. As limited by Plaintiffs' many concessions consistent with their duty to "take reasonable steps to avoid imposing undue burden[,]" Fed. R. Civ. P. 45(d)(1), the searches can be conducted by Caremark using its in-house capability and will yield fewer than three thousand documents for further processing. The usual burden of combing the production set for privilege is largely eliminated by Plaintiffs' agreement to add search terms based on Walgreens' email address so that only third-party communications (which is all that is covered by the subpoena) will be turned up by the searches, even though one custodian is an attorney. In light of Plaintiffs' many steps to reduce the burden of compliance with this subpoena, and mindful of Caremark's well-established interest in the outcome of the case, its ample resources, and the obvious public interest in drug prices, I also find that there is no need to order Plaintiffs to bear any of the costs incurred by Caremark to comply.[4]  See High Rock Westminster St., LLC, 2014 WL 12782611, at *1.

### III.   CONCLUSION

Based on the foregoing, Caremark is hereby ordered to comply with Requests 2, 3 and 4 in the subpoena issued on July 26, 2019, by running the searches specified by Plaintiffs, with the addition of search terms based on Walgreens' email address, for the four identified custodians and the years 2016-2018. Responsive documents shall be produced by August 31, 2020, with a privilege log (if any documents are withheld based on an asserted privilege) provided by September 7, 2020. Because this Memorandum and Order disposes of all matters in issue in this case, the Clerk is directed to terminate the action.

---

[4] This ruling applies to the circumstance as presented to me. Cost-shifting may become appropriate in the future if new discovery targeted at Caremark is propounded.

So ordered.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 7, 2020